**Clifford SHIPTON and Violet Shipton, his wife, Plaintiffs-Appellants,**

**v.**

**Michael L. SHERIDAN and Maureen H. Sheridan, his wife, Defendants-Respondents.**

**No. 9828.**

Missouri Court of Appeals, Springfield District.

Dec. 15, 1975.

Ted M. Henson, Jr., Poplar Bluff, for plaintiffs-appellants.

L. Dwayne Hackworth, Piedmont, for defendants-respondents.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

TITUS, Judge.

Plaintiffs instituted suit to quiet title to 3⁸⁄₁₀ acres (hereinafter the "school lot") situate in the NE ¼ NW ¼ Section 13 Township 27 Range 5 in Wayne County. Defendants answered denying plaintiffs' claim to ownership and averred they owned the school lot by virtue of a deed from Willa Sheridan Burns as surviving spouse of Earl Sheridan. Sans a jury and without making findings of fact or conclusions of law, the trial court "ordered, decreed and adjudged that the issues be found for the defendants and against the plaintiffs and that plaintiffs [sic] Petition is dismissed." Plaintiffs appealed.

In 1918 John and Clara Sheridan, husband and wife, became the owners of the NW ¼ Section 13 Township 27 Range 5 (hereinafter the "northwest quarter"). In 1928 they conveyed the school lot to School District No. 54 a/k/a the Cool Spring School. The warranty deed, inter alia, stated: ". . . when the said [school district] quits using said above described real estate for school purposes such as a school house site and play grounds, then and in

that event, said above described real estate shall revert to and become the property of the then owner of the farm from which said real estate was deeded to said School District at the time of said reversion." The parties have assumed that the school lot, upon termination of the fee simple determinable created by the deed [*Nowlin v. Columbia School District*, 401 S.W.2d 394, 398[2] (Mo. 1966)], was to pass to the then owners of the northwest quarter.

The record before us leaves much to be desired as to the identity and viability of the persons involved. Clara Sheridan died intestate in 1952. We can only presume that John predeceased her and that Claude, Paul and Earl Sheridan were the only sons and living heirs of John and Clara Sheridan in 1955 when the next described conveyance was made.

Claude and Paul Sheridan, "as heirs at law of Clara Sheridan, deceased," and their wives in March 1955 conveyed to Earl and Willa Sheridan, husband and wife, "an undivided two-thirds interest" in the northwest quarter "Except School Lot . . . heretofore deeded off." By a June 1965 warranty deed, Earl and Willa Sheridan conveyed the northwest quarter to plaintiffs "EXCEPT School Lot . . . heretofore deeded off."

The deed on which defendants relied in their answer filed December 17, 1973, was a 1972 quit claim deed given them by "Willa Mae Sheridan Burns" to "Pt. NW ¼ [sic] NW ¼ School Ground Section lot 13 Township 27 Range 5 2.80 acres Index 2629." As can be seen, if this was an effort on the part of Willa to quit claim her interest in the school lot to defendants, the description was defective. Upon discovery of the defect, defendants before trial of the present case obtained a 1974 quit claim deed from Willa, "widow of Earl William Sheridan," to the school lot as it was described in the 1928 deed.

Both sides in this case proceeded on the assumption that the quoted clause appearing in the 1928 deed engrafted upon the estate conveyed to the school district a possible reversionary interest in whoever might be the owner of the northwest quarter when the school district quit using the school lot "for school purposes such as a school house site and play grounds," and that this "possibility of reverter" was assignable. Moreover, all the parties seemed to agree that when Claude and Paul Sheridan in March 1955 conveyed their two-thirds interest in the northwest quarter to Earl and Willa Sheridan, the entire "reversion" was thereby assigned to Earl and Willa because they were the then owners of the northwest quarter—in spite of the fact that the deed expressly excepted the school lot. From this point, plaintiffs insisted that since the event stated in the 1928 deed to effect the "reversion" had not occurred by June 1965 when Earl and Willa conveyed the northwest quarter to plaintiffs, plaintiffs, as the owners of the northwest quarter when the event did subsequently occur, became vested with the "reversionary interest." On the other hand, defendants asseverated that the event stated in the 1928 deed occurred before Earl and Willa conveyed to plaintiffs, thereby then and there vesting Earl and Willa, as tenants by the entirety, with the "reversionary interest" when it came into esse and that Earl and Willa did not thereafter convey or assign this interest to plaintiffs because the June 1965 deed to plaintiffs expressly excepted the school lot. This being so, defendants argued, Willa succeeded to all of the "reversionary interest" when Earl died and effectively assigned that interest to defendants by her quit claim deed in 1974.

In our view all concerned have misconceived the proper issues and the law applicable to the facts presented. A major portion of the parties' briefs on appeal, and much of the evidence adduced at trial, is and was intended to establish on what particular date the grantee school district, or its successor, quit using the school site "for school purposes such as a school house site and play grounds." Although the parties concede the school district has, in fact, quit

using the school lot for the purposes stated, our understanding of the law makes it unnecessary that we ascertain the day this occurred; also, we find it unnecessary to determine whether possibilities of reverter are devisable, alienable or assignable in Missouri.

Both the March 1955 conveyance by Claude and Paul to Earl and Willa and the June 1965 conveyance by Earl and Willa to the plaintiffs excepted the school lot from the transfer of the northwest quarter. "We must determine [the grantors'] intention from the deed[s] [themselves] . . . and give effect thereto unless it conflicts with some positive rule of law. . . . We find, in [the] [deed from Claude and Paul to Earl and Willa and in the deed from Earl and Willa to plaintiffs], no intention on [the grantors' part] to convey [their] possibility of reverter in the schoolhouse tract [i. e., the school lot]. In the description[s] of the [northwest quarter] conveyed by the warranty deed[s], [the grantors] expressly 'excepted' . . . [the school lot theretofore deeded off]; and [grantors] did not expressly *convey* to [grantees] *any interest* in the *land* thus *excluded*. There are no inconsistencies in the language. . . . It is clear and unambiguous. The language negatives any intention by [the grantors] to convey to [the grantees] *any* interest in the tract which [John and Clara Sheridan] had previously conveyed in fee simple determinable to the school district. . . . We hold that [grantors] did not intend to convey any title to or estate in [the school lot] to [their] grantee[s]." *Smith v. School Dist. No. 6 of Jefferson County*, 250 S.W.2d 795, 797[3, 4] (Mo.1952). Thus, Claude and Paul Sheridan did not convey to Earl and Willa Sheridan any of their interest in the possibility of reverter in the school lot. Neither did Earl and Willa convey to plaintiffs any interest in the possibility of reverter in the school lot, and defendants obtained no title to or interest in the school lot by either the 1972 or 1974 quit claim deed from Willa if they are predicating her source of title (and thus theirs) on the March 1955 deed from Claude and Paul. From the sparse record before us we cannot tell if Willa has ever possessed any interest in the possibility of reverter in the school lot by reason of being the widow of Earl or, if so, what percentage of the possibility she may have possessed which could have been quit claimed to the defendants. If the decree nisi intended to enounce that defendants had title to the school lot, it was plainly erroneous on the record before us.

It seems clear from the 1928 deed that the grantors, John and Clara Sheridan, intended that upon termination of the determinable fee, the school lot was to pass to the then owners of the northwest quarter if that be "the farm from which said real estate was deeded to said School District." " 'A limitation over, in a deed creating a determinable fee which shall cease if the land ceases to be used for a specified purpose, is void for remoteness' . . . of vesting (the rule against perpetuities) and . . . the possibility of reverter remained in the grantor[s]" [*Donehue v. Nilges*, 364 Mo. 705, 710–711, 266 S.W.2d 553, 555–556[5], 45 A.L.R.2d 1150, 1153–1154 (1954)] or passed to their heirs. *Smith v. School Dist. No. 6 of Jefferson County,* supra, 250 S.W.2d at 797[5]. From what has been said, it follows that when the school district's fee terminated, the fee simple estate in the school lot automatically passed to and vested in the heirs of John and Clara Sheridan and that upon the record, neither plaintiffs nor defendants have proved any interest in or title to the school lot.

The judgment is reversed and the cause is remanded with directions to the trial court to enter proper judgment in accordance with the conclusions expressed in this opinion.

All concur.